United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

THOMAS DWAYNE HYDE,                      No. C 08-4743 TEH (PR)

            Petitioner,

        v.                               ORDER DENYING PETITION FOR WRIT
                                         OF HABEAS CORPUS; DENYING
MIKE SMELOSKY, Warden,                   CERTIFICATE OF APPEALABILITY

            Respondent.

_____/

        Petitioner Thomas Dwayne Hyde seeks a writ of habeas

corpus under 28 U.S.C. § 2254, which, for the reasons that follow,

the Court denies.


                                I.

        In September 2005, Petitioner was sentenced to twenty-one

years in state prison following his conviction for two counts of

second degree robbery.  Doc. # 8, Ex. B at 911-12.  On January 29,

2007, the California Court of Appeal affirmed the judgment.

Doc. # 8, Ex. F.  On April 18, 2007, the California Supreme Court

denied his petition for review.  Doc. #8, Ex. H.  On July 9, 2008,

1   the California Supreme Court denied state habeas relief.  Doc. #8,

2   Ex. I.

3        On October 5, 2008, Petitioner filed the instant Petition

4   for a Writ of Habeas Corpus raising the following claims: (1) a

5   denial of his right to due process because the evidence was

6   insufficient to support one of his convictions for second degree

7   robbery (the robbery of Deborah Ferrin); (2) a denial of his due

8   process right to a fair and impartial judge; (3) a denial of his

9   right to due process because of jury instruction error; and (4) a

10  violation of state law because the trial court used the same set of

11  facts to impose both an aggravated term and an enhancement.  Doc.

12  #1.  On April 30, 2009, the Court found that the Petition's first

13  three claims stated cognizable claims for relief and ordered

14  Respondent to show cause why a writ of habeas corpus should not be

15  granted.  Doc. #3.  The Court dismissed the fourth claim because

16  violations of state law are not cognizable on federal habeas review.

17  See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).  Respondent has

18  filed an Answer and Petitioner has filed a Traverse.  Doc. ## 8 &

19  15.

20

21                                  II

22        The California Court of Appeal provided the following

23  procedural background of the case:

24           The charges against [Petitioner] arose from a
            pair of robberies that occurred on December 11,
25           2002. The first robbery, of Deborah Ferrin, took
            place at an apartment building in Oakland at
26           about 5:20 p.m., and the second, of Rosemary
            Buell, took place at about 9:00 p.m. in the
27           parking lot of a Kmart in San Leandro.

28

                                  2

United States District Court

For the Northern District of California

1
2
3
4
5
6
7

> On December 31, 2003, [Petitioner] was charged
> by information with two counts of second degree
> robbery (Pen. Code, § 322), with one enhancement
> alleged for the infliction of great bodily
> injury (Pen. Code, § 12022.7, subd. (a)).  A
> prior strike enhancement was also alleged (Pen.
> Code, §§ 1170.12, subd. (c)(1), 667, subd.
> (e)(1)), as were two prior prison term
> enhancements (Pen. Code, § 667.5, subd. (b)).
> [Petitioner] pled not guilty.  On May 4, 2005,
> the Alameda County District Attorney amended the
> information to allege that one of [Petitioner's]
> prior convictions was a serious felony.

8
9
10

> [O]n August 23, 2005, a jury convicted
> [Petitioner] of both counts of robbery and found
> true that [Petitioner] had inflicted great
> bodily injury in connection with one count.  On
> September 21, 2005, the court sentenced
> [Petitioner] to 21 years in prison.

11
12  Doc. #8, Ex. F at 1-2.

13
14

> A.    Robbery of Deborah Ferrin and Related Police
>       Investigation[1]

15  On December 11, 2002, at approximately 5:20 p.m., Ferrin

16 was walking home to her apartment on Ivy Drive in Oakland.  Doc. #8,

17 Ex. B at 305-06, 401.  Ferrin was carrying a black camera case that

18 contained a Nikon N65 camera, a professional flash unit, and two

19 lenses.  The camera case also contained a receipt for the camera

20 which listed Ferrin's name and address.  Id. at 305.  Ferrin noticed

21 a van slowly coming down the street towards her.  When she made a

22 left turn onto Ivy Drive, she noticed that the van was now headed in

23 the same direction as she was walking.  The van eventually passed

24 her and stopped a few feet ahead of her on the other side of the

25

26 _____

27        [1] Petitioner only challenges the sufficiency of the evidence as
to the Ferrin robbery.  Therefore the Court discusses the factual
28 background of the Buell robbery only insofar as it relates to the
investigation of the Ferrin robbery.

United States District Court

For the Northern District of California

1  street.  Id. at 306-07.  Ferrin described the van as a mostly grey

2  Dodge van with long windows on the side facing her.  Id. at 307.

3          As Ferrin turned to go into her apartment, she heard the

4  van door shut and some footsteps.  She then noticed that someone had

5  run up behind her.  Id. at 308-09.  As she turned around to look,

6  the person pushed her head back towards the door and said, "I have a

7  gun."  The person then took her camera bag off her shoulder and ran

8  off.  Id. at 310, 314.  Ferrin did not get a close look at the

9  robber, but had the impression that he was black, approximately

10  6'2", slender, and had dark, well-groomed hair.  Id. at 312.

11          Ferrin was in shock and immediately ran into her

12  apartment.  But when she realized that the robber had taken her

13  camera, she ran back out into the street to get the license plate

14  number of the van.  By the time she got outside, the van had already

15  driven down the road.  Id. at 314-15.

16          That same evening, around 5:40 p.m., someone sold a 35-

17  millimeter N65 Nikon camera, later identified as Ferrin's camera, to

18  the Easy Money Pawn Shop.  The shop is located approximately 2.6

19  miles from Ferrin's Ivy Street apartment.  In rush hour traffic at

20  5:50 p.m. on a weekday, it takes approximately ten minutes to drive

21  from Ferrin's apartment to the pawnshop.  Id. at 661-63.

22          The Easy Money Pawn Shop followed specific procedures when

23  purchasing items.  First, the pawnshop clerk would confirm that the

24  item was in working condition and check that the serial numbers were

25  untouched.  The clerk would then ask the seller for picture

26  identification, verify the validity of the identification, confirm

27  the seller's identity, and input all the information into the

28  computer.  Id. at 337, 340-41.  If the seller was a frequent seller,

4

the clerk used extra caution to determine whether the seller might be trying to sell stolen property. Id. at 337. The clerk would then take the customer's fingerprint, usually the right thumb, and place the fingerprint on the bottom half of the pawn slip. Then the customer would sign the pawn slip. Id. at 342-43. The signature on the pawn slip would be compared against the signature on the identification that has been provided. Id. at 338-39. The slip would also be automatically marked with the time that the money was paid to the customer from the cash register. Id. at 344. The pawn shop retained a pink copy of the slip for at least five years. Id. at 338.

The shop issued a pawn slip for the purchase of Ferrin's camera. The seller provided his fingerprint on the lower right hand corner of the pawn slip. The seller signed the pawn slip "Vaughn Walker." Id. at 345.

Later that night, around 7:30 pm, Ferrin received a phone call from an employee at the Easy Money Pawn Shop, informing her that the shop had her camera. The employee had identified the camera as belonging to Ferrin because her name, address, and phone number were still in the camera bag. Id. at 317.

The next day, December 12, 2002, Ferrin met Scott Schroder, an officer with the Oakland Police Department, at the shop around 12:15 p.m. Id. at 202-03. Ferrin identified her camera and purchased it back for $60. Id. at 320-21. Schroder collected the pawn slip for the purchase of Ferrin's camera from the shop. The slip was dated December 11, 2002, and time-stamped 5:43 p.m.

A print examiner with the Oakland Police Department found that the fingerprints on the pawn slip matched Petitioner's

5

fingerprints. Specifically, she found 16 matching "points of identification", or unique print features. Id. at 373-75, 386. Jessica Salter, an Oakland Police Department criminalist and latent print examiner, reviewed the original examiner's work, and confirmed that the prints matched Petitioner's. Salter found 25 matching points of identification. Id. at 375, 379.

On December 11, 2002, the same night as the Ferrin robbery, Rosemary Buell was robbed in a Kmart parking lot around 9:00 p.m. Id. at 404-05. The robber took her purse which included her Discover credit card and a checkbook. Id. at 456-57. Buell later learned that her checkbook had been used to write checks to two individuals. One of the checks was made out to "Vaughn Walker." Buell stated that she did not know anyone named Vaughn Walker. Id. at 457. Buell's Discover card was used in an attempt to purchase five $200 giftcards at Walmart.com on December 12, 2002 at 12:40 a.m. Id. at 629-34. The purchaser entered Buell's information for the billing address, but entered the following shipping recipient and address: "Ray Green, 1317 66th Avenue, Oakland, CA 94621." Id. at 633. Buell later identified Petitioner as the person who robbed her of her purse that night. Id. at 548.

On December 31, 2002, while investigating the Buell robbery, San Leandro Police Detective Derek Schutz went to 1317 66th Avenue in Oakland, hoping to locate the van that was believed to have been used in the Buell robbery. Id. at 602-05. Schutz located a van that was within a hundred yards of 1317 66th Avenue. Id. at 603. The van was grey and had four vertical tinted windows on the side. Id. at 651. Petitioner was driving the van at the time Schutz located the van. Petitioner stated that he was the only

6

person who drove that van.  Id. at 605-06.  In his closing
statement, the prosecutor noted that Petitioner's van matched the
description of the van that Ferrin described as involved in her
robbery.  Id. at 743.  The prosecutor also pointed out that the
individual who sold Ferrin's camera to the pawnshop identified
himself as "Vaughn Walker."  Similarly, one of Buell's stolen checks
was made out to "Vaughn Walker."  Id. at 735.

> B.   Trial Court Proceedings

The California Court of Appeal summarized the relevant
events at trial as follows:

> ### Court's Impartiality
>
> During pretrial motions, [Petitioner] orally
> challenged the trial judge under Code of Civil
> Procedure section 170.1, subdivision
> (a)(6)(iii), alleging the court was failing to
> act impartially.  Later the same day,
> [Petitioner] filed a written version of the
> challenge, which alleged among other things that
> the court had: (1) used an Internet database to
> conduct an unsuccessful search for Ms. Ferrin;
> (2) suggested that the prosecutor amend the
> information in a manner that could increase
> appellant's sentence; and (3) asked the
> prosecutor whether Ms. Buell was old enough to
> allow the imposition of an elder great bodily
> injury enhancement on [Petitioner].  A hearing
> was held on [Petitioner's] challenge, with a
> second judge reviewing and denying
> [Petitioner's] challenge to the impartiality of
> the trial court.  Later during trial,
> [Petitioner] claims the trial judge committed
> additional acts of misconduct further
> demonstrating his lack of impartiality.
>
> (i) The search for a prosecution witness
>
> On May 3, 2005, during a pretrial meeting with
> the parties held in chambers, the court
> discussed the whereabouts of Ms. Ferrin, the
> robbery victim and prosecution witness who had
> testified at the preliminary hearing but who was
> now believed to be living in the State of
> Georgia.  The parties discussed the fact that,
> if Ms. Ferrin could not be located, a due

diligence hearing would be needed before her
prior testimony could be admitted at trial.  In
response to this discussion, the judge informed
the parties that he had recently learned of an
Internet website that was an unusually effective
tool for location people.  The court did not
identify the name of the site, but in the
presence of both parties, carried out a search
for Ms. Ferrin using this website, which failed
to locate her. . . . [T]he actual due diligence
hearing . . . was not to be held until at least
a week following the scheduling conference.

(ii) The discussion of the need to amend the
information.

During a pretrial settlement discussion on May
2, the court informed the parties that their
shared assumptions regarding [Petitioner's]
maximum sentence exposure did not correspond to
the way the offenses had been charged in the
information. [Petitioner's] counsel stated
during this discussion that both parties
believed [Petitioner's] maximum exposure was
"22, 23 years," a figure that assumed an
enhancement for a prior serious felony
conviction.  The court noted, however, that the
information failed to plead [Petitioner's] prior
conviction as a serious felony under Penal Code
section 667, subdivision (a)(1), and
consequently would not support that sentence.
The following morning, the court asked the
prosecutor whether he had filed an amended
information.  The prosecutor replied that he had
not yet filed the amended information, but that
he would do so that afternoon.  Later the same
day, the court referred to the fact that the
prosecutor would be seeking to amend the
information and noted, "I expect that that
amended information is going to be permitted."

(iii) The discussion of adding an elder
enhancement to the information.

Additionally, on May 3, the court asked both
counsel a question in chambers about the age at
which the elder victim sentencing enhancement
clause would apply under Penal Code section
12022.7, subdivision (c).  The district attorney
replied that the elder victim enhancement
applies to individuals age 65 and older, and
therefore did not apply to the case of Ms.
Buell, who was 64 at the time of the robbery.

8

**(iv) The questioning of prosecution witnesses.**

During trial, the court intervened in the questioning of two prosecution witnesses.  The court questioned Ms. Buell about her use of the term "farsighted" to describe the quality of her eyesight, and asked her to describe the manner in which her purse had been taken.  The court also attempted to focus the voir dire toward the issue of Mr. Nishio's trustworthiness and the foundation for his testimony concerning the Wal-Mart records.[2]  Unable to obtain satisfactory answers on this point, the court asked several questions of Mr. Nishio intended to clarify the nature of his anticipated testimony.

Additionally, the court denied [Petitioner's] objection to the admission of testimony from Ms. Buell as to her ability to walk prior to sustaining injuries in the robbery.  Immediately before making this ruling, the court asked a question of [Petitioner's] counsel in front of the jury: "[H]ow is this [description of Ms. Buell's injuries] not relevant, and how is this not part of showing the elements of [great bodily injury]?"

<div align="center">

**The jury instruction
on receiving stolen property**

</div>

[Petitioner] argued at trial that the court should instruct the jury on receiving stolen property as a lesser included offense of robbery.  However, [Petitioner] conceded both that the court had "no sua sponte duty" to so instruct, and that no case law held otherwise.  [Petitioner] suggested that the court simply had "the legal authority to give [the instruction] upon request, if the facts could support it."

. . . The elements of robbery, which the court presented to the jury through CALJIC No. 9.40, are: (1) A person had possession of property of some value, however slight; (2) the property was taken from that person or from his or her immediate presence; (3) the property was taken against the will of that person; (4) the taking was accomplished either by force or fear; and (5) the property was taken with the specific intent permanently to deprive that person of the property.

_____

[2] Leon Nishio, a senior technical engineer for Walmart.com at the time, was a prosecution witness.  Doc. #8, Exh. B at 630-33.

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

> The elements of receiving stolen property are:
> (1) a person bought, received, withheld, sold,
> concealed or aided in concealing or withholding
> property that had been stolen or obtained by
> theft or extortion; and (2) the person knew, at
> the time of committing this action, that the
> property had been stolen or obtained by theft or
> extortion.  (CALJIC No. 14.65).

Doc. #8, Ex. F at 4-5.


III.        Standard of Review

        Under the Antiterrorism and Effective Death Penalty Act of
1996 ("AEDPA"), codified under 28 U.S.C. § 2254, a federal court may
not grant a writ of habeas corpus on any claim adjudicated on the
merits in state court unless the adjudication:  "(1) resulted in a
decision that was contrary to, or involved an unreasonable
application of, clearly established federal law, as determined by
the Supreme Court of the United States; or (2) resulted in a
decision that was based on an unreasonable determination of the
facts in light of the evidence presented in the State court
proceeding."  28 U.S.C. § 2254(d).

        "Under the 'contrary to' clause, a federal habeas court
may grant the writ if the state court arrives at a conclusion
opposite to that reached by [the Supreme] Court on a question of law
or if the state court decides a case differently than [the] Court
has on a set of materially indistinguishable facts."  Williams
(Terry) v. Taylor, 529 U.S. 362, 412-13 (2000).  "Under the
'unreasonable application' clause, a federal habeas court may grant
the writ if the state court identifies the correct governing legal
principle from [the] Court's decision but unreasonably applies that
principle to the facts of the prisoner's case."  Id. at 413.

10

United States District Court
For the Northern District of California

"[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must be objectively unreasonable."  Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003) (internal quotation marks and citation omitted).  Moreover, in conducting its analysis, the federal court must presume the correctness of the state court's factual findings, and the petitioner bears the burden of rebutting that presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

In four decisions this year alone, the United States Supreme Court reaffirmed the heightened level of deference a federal habeas court must give to state court decisions.  See Harrington v. Richter, 131 S. Ct. 770, 783-85 (2011); Premo v. Moore, 131 S. Ct. 733, 739-40 (2011); Felkner v. Jackson, 131 S. Ct. 1305, 1307-08 (2011) (per curiam); Cullen v. Pinholster, 131 S. Ct. 1388, 1398-1400 (2011).  As the Court explained: "[o]n federal habeas review, AEDPA 'imposes a highly deferential standard for evaluating state-court rulings' and 'demands that state-court decisions be given the benefit of the doubt.'"  Felkner, 131 S. Ct. at 1307 (citation omitted).

When applying these standards, the federal court should review the "last reasoned decision" by the state courts.  Avila v. Galaza, 297 F.3d 911, 918 n.6 (9th Cir. 2002) (treating state court referee's report as the last reasoned state court decision where report was summarily adopted by the court of appeal and petition for review to California Supreme Court was denied without comment).  Because the California Supreme Court summarily denied relief on

1  Petitioner's claims of judicial bias and jury instruction error,
2  this Court looks to the California Court of Appeal's January 29,
3  2007, written decision denying Petitioner's appeal when considering
4  these claims.  In his state habeas petition, Petitioner raised an
5  insufficiency of evidence claim for the first time regarding his
6  conviction for 2nd degree robbery on Count II of the indictment
7  (Ferrin robbery).  Since this argument was summarily denied by the
8  California Supreme Court, this Court looks to the record when
9  evaluating this claim.  See Plasencia v. Alameida, 467 F.3d 1190,
10 1197-98 (9th Cir. 2006).

11         With these principles in mind regarding the standard and
12 scope of review on federal habeas, the Court addresses Petitioner's
13 claims.

14

15 IV.        DISCUSSION

16         Petitioner seeks habeas relief under 28 U.S.C. § 2254
17 based on three claims:  (1) a denial of his right to due process
18 because the evidence was insufficient to support one of his
19 convictions for second degree robbery; (2) a denial of his due
20 process right to a fair and impartial judge; and (3) a denial of his
21 right to due process because of jury instruction error.

22      A.   Sufficiency of the evidence

23         Petitioner claims that there was insufficient evidence to
24 support his conviction on second degree robbery on Count II of the
25 indictment, the robbery of Ferrin.  In particular, Petitioner
26 contends that the evidence only supported a charge of stolen
27 property. The Due Process Clause "protects the accused against
28 conviction except upon proof beyond a reasonable doubt of every fact

United States District Court

For the Northern District of California

United States District Court
For the Northern District of California

necessary to constitute the crime with which he is charged." In re Winship, 397 U.S. 358, 364 (1970).  A federal court collaterally reviewing a state court conviction does not determine if the evidence at trial established guilt beyond a reasonable doubt; instead, the court's role is to determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 318-19 (1979) (emphasis in original).  Thus, a petitioner's writ may be granted only if "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." Id. at 324.  The reviewing court must also presume that the trier of fact resolved any conflicting inferences "in favor of the prosecution, and must deter to that resolution." Id. at 326.  Circumstantial evidence and inferences drawn from that evidence may be sufficient to sustain a conviction. Walters v. Maass, 45 F.3d 1355, 1358 (9th Cir. 1995). Pursuant to AEDPA, the court's inquiry is limited to whether the state court's decision was "an unreasonable application of Jackson and Winship" to the facts of the case. Juan H. V. Allen, 408 F.3d 1262, 1275 (9th Cir. 2005) (internal quotation marks omitted).

     After reviewing the record and according it the deferential review required by AEDPA, Felkner, 131 S. Ct. at 1307, this court cannot say that no rational trier of fact could find that Petitioner was guilty of robbery beyond a reasonable doubt. Circumstantial and direct evidence linked Petitioner to the Ferrin robbery.  Petitioner drove a van similar to the one which Ferrin described as being involved in her robbery.  The fingerprint evidence established that Petitioner sold Ferrin's camera to the

Easy Money Pawn shop, which was a 10-minute drive from Ferrin's apartment.  In addition, Buell identified Petitioner as the person who robbed her of her purse, which contained a checkbook.  The checkbook was used to falsely write a check to a "Vaughn Walker" – the same name used by the individual who sold Ferrin's camera to the pawnshop.  Viewing the evidence in the light most favorable to the prosecution, it was reasonable for the jury to find Petitioner guilty of robbing Ferrin.  See Jackson, 443 U.S. at 324.  Petitioner is not entitled to federal habeas relief on this claim.

<div align="center">B</div>

Petitioner's second claim for relief raises due process challenges based on alleged judicial bias.  The Due Process Clause guarantees a criminal defendant the right to a fair and impartial judge.  See In re Murchison, 349 U.S. 133, 136 (1955); Kennedy v. Los Angeles Police Dep't, 901 F.2d 702, 709 (9th Cir. 1989).  Federal habeas relief is limited to those instances where there is proof of actual bias, or of a possible temptation so severe that one might presume an actual, substantial incentive to be biased.  See Del Vecchio v. Illinois Dep't of Corrections, 31 F.3d 1363, 1380 (7th Cir. 1994) (en banc).  A state judge's conduct must be significantly adverse to a defendant before it violates constitutional requirements of due process and warrants federal intervention.  See Garcia v. Warden, Dannemora Correctional Facility, 795 F.2d 5, 8 (2nd Cir. 1986).

A trial judge "must be ever mindful of the sensitive role [the court] plays in a jury trial and avoid even the appearance of advocacy or partiality."  Stivers v. Pierce, 71 F.3d 732, 741 (9th Cir. 1995) (civil context) (quoting United States v. Harris, 501

<div style="writing-mode: vertical">**United States District Court**
For the Northern District of California</div>

<div align="center">14</div>

United States District Court
For the Northern District of California

F.2d 1, 10 (9th Cir. 1974)).  At the same time, however, courts have recognized that a trial judge is "more than an umpire."  <u>United States v. Laurins</u>, 857 F.2d 529, 537 (9th Cir. 1998).  It is generally appropriate for a trial judge to participate in the examination of witnesses for the purpose of clarifying the evidence or controlling the orderly presentation of the evidence.  <u>United States v. Morgan</u>, 376 F.3d 1002, 1008 (9th Cir. 2004).  A trial judge's participation oversteps the bounds of propriety and deprives the parties of a fair trial only when the record discloses actual bias or leaves the reviewing court with an abiding impression that the judge's remarks and questioning projected to the jury an appearance of advocacy or partiality.  <u>See</u> <u>United States v. Parker</u>, 241 F.3d 1114, 1119 (9th Cir. 2001).  In the context of federal habeas review, the question is not whether the state judge committed judicial misconduct, but whether the state judge's behavior "render[ed] the trial so fundamentally unfair as to violate federal due process under the United States Constitution."  <u>Duckett v. Godinez</u>, 67 F.3d 734, 740 (9th Cir. 1995)(emphasizing that a federal court "has no supervisory authority over criminal proceedings in a state court" and must only focus on whether the judge's actions, considered in the context of the trial as a whole, violated due process).

  Petitioner argues that the trial judge's aggregate misconduct was so improper that it created a conclusive presumption of actual bias.  The appellate court examined each instance of alleged judicial misconduct in detail and concluded that the court's actions did not establish a conclusive presumption of actual bias,

and were therefore not a violation of Petitioner's right to due process.

(i) The search for a prosecution witness

Petitioner argues that the judge showed actual bias in informing the parties of an Internet website that was an unusually effective tool for locating people.  The judge did not identify the name of the site but, in the presence of both parties and outside of the jury's presence, used the site to search for Ferrin whom the parties had been unable to locate.  The California Court of Appeal concluded that

> [a] reasonable interpretation of what transpired is that the court simply was trying to make the parties aware of modern technological tools that were now available, the use of which could be relevant to the due diligence inquiry.  Given this apparent purpose, the action did not improperly invade the prosecutorial function.

Doc. 38, Ex. F at 5.

The California Court of Appeal's rejection of Petitioner's claim was not an objectively unreasonable application of clearly established federal law.  See 28 U.S.C. § 2254(d).  As the state appellate court noted, the trial judge's demonstration of an internet website does not constitute active investigation and calling of witnesses.  In addition, the judge's actions took place outside of the jury, and therefore "had no effect on the tactics of either side or their ability to argue their case to the jury."  Id. The state appellate court reasonably concluded that the judge's demonstration of an Internet search website was not proof of actual bias.  See, e.g., United States v. Lopez-Martinez, 543 F.3d 509, 513-14 (9th Cir. 2008) (finding that trial judge's remarks were

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

proper where they showed no evidence of actual bias and were made
outside the jury's presence).

> **(ii) The discussion of the need to amend the information and the possibility of an elder victim enhancement.**

Petitioner also argues that the trial judge demonstrated
bias in (1) reminding the prosecutor several times to file an
amended information pleading Petitioner's prior conviction as a
serious felony, and (2) asking both counsel whether an elder victim
sentencing enhancement clause would apply. During pretrial
proceedings on May 2, 2005, defense counsel informed the trial judge
that he and the prosecutor agreed that the potential sentence was
22, 23 years. Doc. #8, Exh. B, Vol. 1 at 2. The trial judge asked
counsel to explain how they determined the length of Petitioner's
potential sentence. The prosecutor explained that he calculated
that number by including five years for Petitioner's prior
conviction of a serious felony within the meaning of Cal. Penal Code
§ 667(a)(1). Doc. #8, Exh. A at 259.

The judge then reviewed the information and advised both
counsel that the information did not support the potential sentence.
Specifically, the prior robbery had been pled as a strike, not as a
serious felony. The prosecutor responded that he would file an
amended information. Id.

The next day, the judge asked the prosecutor whether the
amended information would be ready for discussion that afternoon.
The prosecutor said he hoped so, but that he would certainly have it
by the following morning. Doc. #8, Exh. A at 259 and Exh. B at 15.
When Petitioner waived his presence for the afternoon proceedings,
the judge informed Petitioner that the prosecutor might file an

17

United States District Court

For the Northern District of California

1   amended information alleging one of Petitioner's prior convictions

2   to be a serious and/or violent felony, and that he had a right to be

3   present during the filing and a right to have a jury trial on the

4   prior conviction.  Doc. #8, Exh. B at 17, 19.  He also informed

5   Petitioner that the amended information would have the consequence

6   of making the prior a five-year prior.  Petitioner waived his right

7   to be present and to a jury trial on the prior conviction.  Id. at

8   19.

9        That afternoon, the trial judge and both counsel reviewed

10  Petitioner's videotaped confession.  Doc. #8, Exh. A at 260 and Exh.

11  B at 72.  During the confession, the detective informed Petitioner

12  that Buell had suffered a broken hip during the robbery, to which

13  Petitioner responded by asking Buell's age.  The detective stated

14  that Buell was in her 60s.  Doc. #8, Exh. A at 260.  At this point,

15  the trial judge asked both counsel what the age requirement was for

16  the elder victim clause.  The judge did not give any reason for

17  making the inquiry.  The prosecutor stated that the enhancement

18  clause had not been charged because the age requirement was 65, and

19  Buell was 64 at the time of the robbery.  Id.

20       Reviewing the record, the California Court of Appeal

21  concluded that the trial judge referred to the amendment of the

22  information

23

24          in the context of informing [Petitioner] about events that
            would take place in his absence, and in determining whether
25          the expected amendment to the information had been filed.
            Under the circumstances, it is a mischaracterization to
26          liken these comments to [advocacy].  Similarly, the
            question regarding the elder victim enhancement was not an
27          act of advocacy for any particular position but an attempt
            to clarify the law that applied to the robbery of Ms.
28

United States District Court

For the Northern District of California

1          Buell.  Therefore, these actions did not deny
2          [P]etitioner's right to due process.

3    Doc. 38, Ex. F at 7.

4          A judge is required "to preside in the manner and with the
5    demeanor to provide a fair trial to all parties and his discretion
6    in the performance of this duty and management is wide."  <u>Parker</u>,
7    241 F.3d at 1119.  The trial court's actions in discussing the need
8    to amend the information and the possibility of an elder victim
9    enhancement can reasonably be viewed as ensuring a fair trial to all
10   parties: the judge sought clarification as to the accuracy of the
11   potential sentence and as to the law applicable to the robbery of
12   Buell.  Petitioner is not entitled to federal habeas relief because
13   the state court's determination that Petitioner was not denied due
14   process was not objectively unreasonable.  <u>See</u> 28 U.S.C. § 2254(d).

15         (iii) The questioning of prosecution witnesses

16         Petitioner further argues that the trial judge indicated
17   actual bias by (1) intervening in the questioning of Buell and
18   Nishio and (2) denying Petitioner's objection to admission of
19   testimony from Buell regarding her ability to walk prior to the
20   robbery.  The judge questioned Buell to (1) clarify that she was
21   referring to "prescription changes" when she stated that she had two
22   changes of glasses since the robbery and (2) clarify her use of the
23   term "far-sightedness."  Doc. #8, Ex. B at 439-41.

24         Similarly, the judge questioned Nishio in an attempt to assist
25   defense counsel in conducting his voir dire.  Leon Nishio, a
26   technical engineer at Walmart.com, testified for the prosecution
27   concerning the attempted online purchase of the Wal-mart giftcards
28   with Buell's Discover credit card.  Nishio's testimony explained

United States District Court
For the Northern District of California

what a purchaser would need to do to make an online purchase at the Walmart.com website, and what would happen to the purchaser's data once entered into the website.  Id. at 614, 615.  During the prosecution's questioning, the judge interrupted Nishio, seeking clarification of Nishio's answers.  Id. at 314-16.  The judge later allowed defense counsel to voir dire Nishio regarding whether Nishio was qualified to testify as to the Discover card purchases at issue. Id. at 622.  Defense counsel, however, focused his questioning on the screenshots, arguing that the screen shots were inadmissible. The judge interrupted and conducted the voir dire regarding Nishio's qualifications.  Id. at 623-25.  The judge then noted and overruled defense counsel's objection to the admission of the screenshots under both Cal. Evid. Code § 1271 and People v. Lugashi, 205 Cal.App.3d 632 (1988).  Id. at 628.

Additionally, the judge declined Petitioner's objection to the admission of testimony from Buell regarding her ability to walk prior to the robbery.  Petitioner wished to stipulate that Buell had suffered great bodily injury, but the prosecution declined.  In front of the jury, the judge asked Petitioner why a description of Buell's injuries would not be considered a required element of great bodily injury.

The California Court of Appeal concluded that none of the judge's actions created a conclusive presumption of bias:

> When a witness gives answers that are incomplete or unclear, as Ms. Buell did with regard to the quality of her eyesight, "it is entirely proper for the court to intervene in order to aid in the elicitation of clear and comprehensive testimony."  The court's handling of the voir dire of Mr. Nishio, similarly was entirely reasonable.  By intervening in the voir dire to address a concern that the court had raised sua sponte, the court actually subjected Mr. Nishio to a more rigorous

United States District Court

For the Northern District of California

1   examination than would otherwise have occurred.  The court
    also heard and discussed the defense objections to the
2   testimony Mr. Nishio planned to offer, and the court did
    not, contrary to appellant's assertions, "disparag[e]
3   defense counsel's ability."  In fact, the court both
    summarized the elements of Evidence Code section 1271 for
4   [Petitioner] and assisted him in reframing his initially
    meritless objection to Mr. Nishio's testimony.  This was
5   not an effort to demean appellant, but rather an effort to
    conduct a voir dire that thoroughly addressed the relevant
6   evidentiary issues.

7   The court's treatment of [Petitioner's] objection to Ms.
    Buell's great bodily injury testimony also was not
8   improper.  Its discussion of the elements of a great
    bodily injury sentencing enhancement, and the relevance of
9   Ms. Buell's injuries to that enhancement did not
    communicate to the jury a "complete rejection of the
10  defense to great bodily injury enhancement," as
    [Petitioner] suggests.  While the court's question may
11  have suggested that the court considered those injuries to
    be relevant in deciding whether Ms. Buell had suffered a
12  great bodily injury, the jury likely drew the same
    conclusion from the fact that the court overruled
13  [Petitioner's] objection on this ground.

14  Doc. #8, Ex. F at 8-9.

15      The state appellate court reasonably determined that the

16  judge's questioning of prosecution witnesses did not indicate actual

17  bias.  The judge questioned Buell and Nishio to clarify their

18  statements and to clarify whether Nishio was qualified to testify

19  regarding the Walmart.com purchases.  The judge allowed testimony

20  regarding the effect of Buell's injuries on her ability to talk

21  because it was an element of the great bodily injury sentencing

22  enhancement.  In doing so, the judge was properly clarifying

23  testimony and evidence.  See Laurins, 857 F.2d at 537; see also

24  Parker, 241 F.3d at 1119 ("The judge may . . . participate in the

25  examination of witnesses to clarify issues . . .").

26      Moreover, the state appellate court reasonably found that

27  the judge's actions throughout the trial did not, in the aggregate,

28  amount to a violation of Petitioner's due process rights.  The trial

21

judge properly exercised his judicial function of clarifying evidence and ensuring an orderly trial. <u>Morgan</u>, 376 F.3d at 1008. The trial judge's actions did not render the trial "so fundamentally unfair as to violate federal due process. . ." <u>Duckett</u>, 67 F.3d at 740. Petitioner is not entitled to federal habeas relief based on the judge's questioning of prosecution witnesses.

<div align="center">C</div>

Petitioner claims that the trial court denied his right to due process when it refused his request to instruct the jury on receiving stolen property (Cal. Pen. Code § 496) as a lesser-included offense of robbery. Petitioner fails to state a viable claim for habeas relief because the failure of a state trial court to instruct on lesser-included offenses in a non-capital case, such as this one, does not present a federal constitutional claim. <u>See</u> <u>Solis v. Garcia</u>, 219 F.3d 922, 929 (9th Cir. 2000). Furthermore, there is no clearly established Supreme Court authority requiring such instructions. Although the Supreme Court has held that a failure to instruct on a lesser-included offense may be constitutional error in a capital case, <u>Beck v. Alabama</u>, 447 U.S. 625, 638 (1980), it has not extended this holding to non-capital cases.

The Ninth Circuit has suggested that "the defendant's right to adequate jury instructions on his or her theory of the case might, in some cases, constitute an exception to the general rule." <u>Solis</u>, 219 F.3d at 929. The Ninth Circuit's observation in <u>Solis</u> – that the failure to give an instruction on lesser-included offenses may violate a defendant's constitutional right to adequate jury instructions on his theory of the case – does not compel a different

<div align="center">22</div>

United States District Court
For the Northern District of California

result because it is not based on clearly established Supreme Court precedent, as required by 28 U.S.C. § 2254(d).  See, e.g., Gilmore v. Taylor, 508 U.S. 333, 343-44 (1993) (rejecting claim that jury instructions violated defendant's constitutional right to a meaningful opportunity to present a defense because the cases in which the Court has invoked this principle dealt either with the exclusion of evidence or the testimony of a defense witness; none of them involved restrictions on a defendant's ability to present an affirmative defense).

        Furthermore, the California Court of Appeal determined that, under California law, receiving stolen property is not a lesser-included offense of robbery.  Doc. 38, Ex. F at 11-12.  To the extent that petitioner is challenging the state court's interpretation of its own law, this claim is not cognizable on federal habeas.  See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).  Petitioner is not entitled to federal habeas relief on his instructional error claim.

V

        For the foregoing reasons, the Petition for a Writ of Habeas Corpus is DENIED.

        Further, a Certificate of Appealability is DENIED.  See Rule 11(a) of the Rules Governing Section 2254 Cases.  Petitioner has not made "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  Nor has Petitioner demonstrated that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  Slack v. McDaniel, 529 U.S. 473, 484 (2000).  Petitioner may not appeal the denial of a Certificate of Appealability in this Court

but may seek a certificate from the Court of Appeals under Rule 22
of the Federal Rules of Appellate Procedure.  <u>See</u> Rule 11(a) of the
Rules Governing Section 2254 Cases.

The Clerk is directed to enter Judgment in favor of
Respondent and against Petitioner, terminate any pending motions as
moot and close the file.

IT IS SO ORDERED.

DATED      _09/07/2011_

THELTON E. HENDERSON
United States District Judge

G:\PRO-SE\TEH\HC.08\Hyde-08-4743-deny-habeas.wpd

**United States District Court**
For the Northern District of California